UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SOUTHEASTERN MATERIALS, INC. | ) | Case No. 09-52606 |
| | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| W. JOSEPH BURNS, TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 10-6059 |
| | ) | |
| vs. | ) | |
| | ) | |
| FIRST BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter came before the Court on June 6, 2011, upon the Motion to Dismiss (the "Motion") filed by Defendant First Bank on April 8, 2011. The Motion sought to dismiss all counts of the Amended Complaint (the "Complaint"), filed by Plaintiff W. Joseph Burns (the "Trustee") on March 18, 2011. Benjamin A. Kahn and Elizabeth M. Brantley appeared on behalf of First Bank. David F. Meschan and Martha R. Sacrinty appeared on behalf of the Trustee. As the Court announced at the end of the hearing, the Motion is granted as to the First Alternative Claim, the Fourth Claim, the Fifth Claim, and the Sixth Claim. The Motion is denied as to all remaining claims. This opinion further explains the basis for that ruling.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28

U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2), which this Court has the jurisdiction to hear and determine.

## II.  RULE 12(b)(6) STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In Twombly, the Supreme Court announced a new standard to replace the traditional notice pleading standard, holding that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.  The Court held that it did  "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Giarrantano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008) (applying Twombly's plausibility standard). [1]

In Iqbal, the Supreme Court further discussed this plausibility standard:

---

[1] This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim and enough specificity to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.  See Twombly, 550 U.S. at 555;  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

Pursuant to Iqbal, courts are to employ a two-part inquiry. The Third Circuit described this process as follows:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted); see also In re Caremerica, Inc., 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009) (employing the two-pronged analysis of Fowler).

### III.  ANALYSIS

**A.    The First Claim Sufficiently Pleads a Claim for Declaratory Judgment**

The First Claim seeks declaratory judgment as to whether certain advances made by First Bank are secured by a deed of trust recorded in December 1997, whether payments made by Southeastern Materials, Inc. (the "Debtor") should be reconstituted as payments against a

3

December 1997 promissory note, and whether First Bank's lien under the December 1997 deed of trust is invalid in whole or in part.

The Complaint alleges that the December 1997 deed of trust does not meet the requirements of a future advance deed of trust under N.C. Gen. Stat. § 45-68.  It alleges that payments were misapplied to purported future advances when they should have been applied to pay down the principal balance of the December 1997 promissory note.  The Complaint provides factual support for these allegations in the body of the Complaint and in the documents attached to the Complaint.  As such, there is an actual controversy with respect to the validity and extent of First Bank's lien.  Therefore, the Motion is denied as to the First Claim.

> **B.    The First Alternative Claim Fails to State a Claim for Declaratory Judgment Upon Which Relief May Be Granted**

In the First Alternative Claim, the Complaint alleges that all of the necessary parties did not sign a loan modification agreement, and that therefore the maturity date was not validly extended beyond the original maturity date of November 20, 2007.  The December 1997 deed of trust provides that the maturity date may be extended by the written agreement of the "Obligor" and First Bank.  "Obligor" is defined in the deed of trust as "any person or entity who is a maker of, or who is obligated under, the Obligation."  "Obligation" is defined as the December 1997 promissory note.

The sole parties to the December 1997 promissory note were First Bank and the Debtor. The Complaint alleges that Tony Dennis and Betty Lambert were also "Obligors" within the meaning of that term.  However, they only signed the note as officers of the Debtor, and not in their personal capacities.  The loan modification agreements extended the maturity date of the note, but did not modify the meaning of "Obligor" as that term is defined in the deed of trust.

The Debtor, as "Obligor," was a party to all of the loan modification agreements, which were in writing. Tony Dennis and Betty Lambert, as guarantors of the note, are not "Obligors" as that term is defined in the deed of trust, and therefore their signatures were not necessary to extend the maturity date.

This conclusion is supported by the plain language of the relevant documents, which were attached to the Complaint. The terms of the documents referenced in a complaint are controlling at the motion to dismiss stage. In re America Capital Corp., 425 B.R. 714, 719 (Bankr. S.D. Fla. 2010) ("For purposes of a motion to dismiss, the terms of the documents sued upon and referenced in the complaint are controlling and must be considered over any contradictory allegations in the complaint or any other filing or submission.").

Since the Plaintiff's theory of recovery is contradicted by the language of the documents referenced by and attached to the Complaint, the Motion is granted as to the First Alternative Claim.

**C.     The Second Claim Sufficiently Pleads a Claim for Declaratory Judgment**

The Second Claim requests declaratory judgment that language contained in both a 2000 security agreement and an April 2006 financing statement does not cover any equipment located outside of Columbus County, North Carolina. These documents, which are attached to the Complaint, define First Bank's collateral as "any and all of the Debtor's . . . equipment, wherever located." However, later language in the same definition provides that "the address where the Debtor keeps and maintains the equipment is Hwy 904 Tabor City, Columbus County, North Carolina."

The meaning of this language is not clear on its face. The later language, which states

where the equipment is kept and maintained, could be interpreted to qualify, modify, or explain the previous language that the security interest covers the Debtor's equipment "wherever located." This claim presents a question of fact as to the intent of the parties. Therefore, the Motion is denied as to the Second Claim.

    D.  **The Third Claim Sufficiently Pleads a Claim for Marshaling**

The Third Claim asserts that the equitable doctrine of marshaling should be applied to require First Bank to first recover from the assets of a corporate affiliate of the Debtor. The Trustee argues that a number of equitable factors support such a result. For example, the Complaint alleges that the individuals controlling the Debtor used the Debtor's assets to fund or pay obligations of the corporate affiliate. It also alleges that these individuals made the Debtor the affiliate's general partner, which increased the Debtor's exposure to creditors without an equivalent return through income or investment.

The equitable doctrine of marshaling may be applied for the benefit of a junior lien creditor when 1) the junior lien creditor and the senior lien creditor are dealing with a common debtor who owns two or more properties, 2) the senior lien creditor has a lien on two or more of the debtor's properties, and 3) the junior lien creditor has a junior lien on fewer of the properties than the senior lien creditor. In re Eagle Pine Prods., Inc., 284 B.R. 784, 786 (Bankr. E.D.N.C. 2001). Thus, generally speaking, the properties must be owned by a common debtor. However, narrow exceptions to the common debtor rule may exist, depending on the equities of the case. Id. at 786 (stating that "there may be circumstances . . . where marshaling may be required when two related debtors are the property owners").

Although it is difficult to establish such an exception to the common debtor rule, the

Court will not eliminate this possibility at such an early stage of this litigation, given the Complaint's allegations. From the allegations in the Complaint, it is plausible that the equities of the case could warrant marshaling. Therefore, the Motion is denied as to the Third Claim.

> **E.    The Fourth Claim Fails to State a Claim for Equitable Subordination Upon Which Relief May Be Granted**

The Fourth Claim seeks to equitably subordinate First Bank's claim to the claims of all non-insider creditors, on the basis of First Bank's inequitable conduct. Equitable subordination requires a three-part showing. First, the claimant must have engaged in some type of inequitable conduct. Second, the misconduct must have resulted in injury to creditors of the debtor or conferred an unfair advantage to the claimant. Third, equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code. In re FCX, Inc., 60 B.R. 405, 401 (E.D.N.C. 1986).

The Complaint alleges that First Bank was an insider of the Debtor because it developed a relationship with the Debtor that was not arms length, and the relationship evolved into one of affinity with and, ultimately, control of the Debtor. However, the Complaint provides insufficient factual support for this allegation. It simply points to certain business and personal relationships between officers of the two entities–for example, officers for both entities serving on First Bank's local advisory board or working together for Habitat for Humanity. See In re Gluth Bros., 424 B.R. 379, 391 (Bankr. N.D. Ill. 2009) (trustee's allegations were insufficient to show insider status or control, including allegations that the bank's founder served on debtor's board of directors, the bank's CEO was the debtor's attorney's wife, the bank requested additional collateral in exchange for not declaring a default, the bank loaned additional money, and the bank extended the maturity date).

The Complaint also alleges that First Bank's inequitable conduct included accepting interest-only payments, continuing to loan funds to the Debtor, and failing to declare the Debtor's loans in default, resulting in First Bank artificially sustaining the Debtor's business. It alleges that First Bank improperly applied the Debtor's payments to protect itself as the Debtor's business declined, obligated the Debtor on loans advanced to other individuals or entities, and refused to take action when it knew assets were being improperly liquidated.

The Complaint does not plead sufficient facts to enable the Court to draw a reasonable inference that First Bank's claim should be subordinated. The allegations in the Complaint supporting control and inequitable conduct by First Bank are meager; they fall short of the type of allegations that commonly support the remedy of equitable subordination. Gluth, 424 B.R. at 394 (the type of inequitable conduct sufficient for equitable subordination generally falls within three categories: "(1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) [the] claimant's use of the debtor as a mere instrumentality or alter ego."). The Trustee's claim simply has not been pushed into the realm of plausibility. Therefore, the Motion is granted as to the Fourth Claim.

### F.    The Fifth Claim Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty Upon Which Relief May Be Granted

The Fifth Claim seeks damages for aiding and abetting breach of fiduciary duty. This Court has previously noted that the existence of this cause of action in North Carolina is questionable . In re Bostic Constr., Inc., 435 B.R. 46, 66 (Bankr. M.D.N.C. 2010). The United States District Court for the Western District of North Carolina has held that no such cause of action exists in this state. Laws v. Priority Trustee Services of N.C., LLC, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009). However, assuming that such a claim exists, "a party asserting such a

claim must show: (1) the existence of a breach of fiduciary duty by the primary party; (2) actual knowledge of such violation by the aiding and abetting party; (3) substantial assistance by the aider and abetter in the breach of fiduciary duty by the primary party; and (4) resulting injury and damage to the plaintiff." Bostic, 435 B.R. at 67.

The Complaint alleges that First Bank aided and abetted a breach of fiduciary duty by the Debtor's officers and directors by, among other actions, loaning additional money to the Debtor, releasing certain collateral, and refraining from demanding payment from the Debtor with the knowledge that the Debtor would continue to incur trade debt that it might not be able to pay. Such allegations, even if true, do not establish that First Bank substantially assisted the Debtor's principals in breaching their fiduciary duties. This claim is also not plausible. Therefore, the Motion is granted as to the Fifth Claim.

### G. The Sixth Claim Fails to State a Claim for Unfair and Deceptive Trade Practices Upon Which Relief May Be Granted

The Sixth Claim seeks recovery for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-16. A prima facie claim under the Unfair and Deceptive Trade Practices Act (the "UDTPA") consists of three elements. First, the defendant must have committed an unfair or deceptive act or practice. Second, the action must have been in or affecting commerce. Third, the act must have proximately caused injury to the plaintiff. Dalton v. Camp, 353 N.C. 647, 656 (2001). Recovery under the UDTPA is "limited to those situations when a plaintiff can show that plaintiff detrimentally relied upon a statement or misrepresentation and he or she 'suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.' " McLamb v. T.P. Inc., 619 S.E.2d 577, 582-83 (N.C. App. 2005) (quoting Forbes v. Par Ten Group, Inc., 394 S.E.2d 643, 651 (N.C. App. 1990)); see also Pearce v. American Defender Life

9

Ins. Co., 316 N.C. 461, 471 (1986) ("It must be shown that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.").

The Complaint alleges that First Bank continued to allow the Debtor to carry a substantial loan balance without any repayment of principal, allowed the Debtor to make interest only payments after it had become insolvent, allowed the Debtor to make late loan payments without acceleration or demand, and allowed the Debtor to incur more trade debt while simultaneously depleting its assets. These allegations, even if true, do not establish any deceptive act or practice, nor do they establish any statement or misrepresentation on the part of First Bank upon which any party detrimentally relied. This claim is also not plausible. Therefore, the Motion is granted as to the Sixth Claim.

### H.     The Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth and Fourteenth Claims Sufficiently Plead Objections to Claims

The Seventh Claim through the Fourteenth Claim are all objections to the proofs of claim filed by First Bank. They present open factual issues as to the validity and extent of these claims. At the very least, there are factual issues as to the amount of First Bank's claims. The Court will not preclude discovery on these issues at this early stage. These claims have been sufficiently plead within the meaning of Iqbal and Twombly. Therefore, the Motion is denied as to the Seventh Claim through the Fourteenth Claim.

### IV.  CONCLUSION

For the reasons stated on the record and in this opinion, the Motion shall be granted in part and denied in part. The Motion is granted with regard to the First Alternative Claim, the Fourth Claim, the Fifth Claim, and the Sixth Claim. The Motion is denied with regard to all of the remaining claims in the Complaint. First Bank filed an answer to the Complaint on June 27,

2011. If the parties are unable to agree on a joint scheduling order, the Court will hold an initial pre-trial conference on July 20, 2011.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered contemporaneously herewith pursuant to Fed. R. Bankr. P. 9021.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTHEASTERN MATERIALS, INC. ) | Case No. 09-52606 |
| ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| ) | |
| W. JOSEPH BURNS, TRUSTEE ) | |
| ) | |
| Plaintiff, ) | Adv. No. 10-6059 |
| ) | |
| vs. ) | |
| ) | |
| FIRST BANK, ) | |
| ) | |
| Defendant. ) | |

## PARTIES IN INTEREST

Benjamin A. Kahn, Esq.

Elizabeth M. Brantley, Esq.

David F. Meschan, Esq.

Martha R. Sacrinty, Esq.

W. Joseph Burns, Esq.